May I approach? Yes, you may, Counselor. May it please the Court, Mr. Rodriguez. My name is Ralph Berkey. I represent the appellant USCO Industries. Today we present the Court with a question of manifest weight of the evidence. Something akin to what the Supreme Court referred to in Scott v. Industrial Commission when it said that this case involves many of the time-worn issues. The resolution of which we have consistently stated lies within the province of the Industrial Commission. These include drawing inferences from the evidence, resolving conflicting testimony, determining the credibility of witnesses, and deciding whether the claimant has fulfilled his burden of proof. Before you is a case where the Workers' Compensation Commission ruled against the employee, but where the Circuit Court reversed, saying that the Workers' Compensation Commission denial was contrary to the manifest weight of the evidence. Our appeal urges this Court to reverse the Circuit Court and reinstate the Workers' Compensation Commission's denial of compensation. We point out that the Circuit Court's order was an outright reversal, not a remand. The case turns on whether or not the employee injured his left arm or his right arm in his alleged October 18, 2007 accident, and how the injury was addressed by the treating physician, Dr. DeSimone. There's no disagreement on the standard of review. How did he get to Dr. DeSimone? There's free choice of medical. I am not sure, Your Honor, whether or not he was directed there. I didn't know if that was a company provided. Well, that's an interesting point, because since July 1 of 1975, the employee has had free choice of medical. So there really doesn't exist an employer-mandated medical. There can be, we'll drive you to the doctor, but the treating doctor is in no way an agent of the employer. Okay. So your answer is you don't know how he got there. I do not know. The record does not reflect that. I do not remember from the record whether it does. It may or may not. There's no disagreement on the standard of review. The Workers' Compensation Commission decision must stand if there is any factual evidence to support its decision, as we heard argued in the last case. So here you're relying on the medical records to ask that the circuit court be reversed. As I understand it, the claimant testified he received no medical care with respect to the right arm on October 18th. He had the records show, and obviously he was talking to Dr. DeSimone. He was looking at the extremities and the injuries on the right side. The claimant's medical records from October 2007 identify his right arm as the one injured as a result of the October 18th work accident. And there's some conflict. You're saying that clearly the commission weighed the conflict in the evidence. Yes, Your Honor. Is that your position? Yes. It's not a question of the circuit court or this court re-weighing the evidence. The Industrial Commission, or the Workers' Compensation Commission, is charged with that responsibility. But what about his argument the medical records mistakenly documented his right arm as the one injured? Well, he, the employee, is the one who sponsored those records into evidence. Those are his exhibits. He had a chance. He had every chance in the world to explain the so-called error, which we hold is no error at all. It's a failure of his to explain, not a failure of ours. Aside from the claimant, did anyone else testify that the records were an error? No. Your opponent points out in his brief that the original note in the diagnostic section of the X-ray report from that first visit to Dr. Simone. Yes, Your Honor. Or Desimone, originally had L for left circled, you know, for arm pain, shoulder pain, or whatever. Then that was X'd out and changed to right. Do you agree with that? I agree that that is what is in the record. And that is further support for our position that the error was realized. It does indicate there's some confusion that day at that office about which arm was reported as injured. Which confusion was resolved by the treating doctor by making the affirmative entry, oops, I made a mistake, it shouldn't be L, it should be R. And the concatenation of other circumstances that pointed to it being the right arm, which I'll get to in a minute. Did Dr. Desimone testify? No. In this case. So we just have his records. Only the cold, the ice cold records. Another way of saying the standard of review is that a reviewing court can only overrule a commission decision if the opposite conclusion is clearly apparent. So I respectfully direct the court's attention to our brief, which asserts that it was within the province of the workers' compensation commission to find that each of the following propositions was more probably true than untrue. Number one, that the employee gave a right arm history. That Dr. Desimone's references to the right arm were correct. That Dr. Desimone was never asked to change the records from right arm to left arm. Importantly, Dr. Desimone examined both arms and made discrete entries as to each. The radiology technician x-rayed the arm complained of, right arm, not the left. That in putting the blood pressure cuff on the employee's left arm, the receiving nurse avoided placing the blood pressure cuff on an arm that was injured. Why would you do that on an arm that is injured? You take the uninjured arm. Importantly, much later, the large, large rotator cuff tear found on Dr. Wardell's examination at surgery nearly a year later on September 22, 2008, was not caused by the accident of October 18, 2007. It not being symptomatic in the meantime. Further, it was within the province of the Workers' Compensation Commission to consider several things as bearing negatively on the employee's assertion that he injured his left arm in October of 2007. First, he made no attempt to offer any evidence other than his own testimony to support his theory that the medical records that he sponsored into evidence contained the errors that he alleged. That six months after the alleged accident, on February 4, 2008, he attributed his left arm symptoms to an unspecified reaching incident without attribution to his employment or his alleged October 18, 2007 fall at work, as he described it. Finally, that on July 16, 2008, he described his October 18, 2007 fall to Dr. Wardell. He made an important change in the mechanism of injury. Now, his story was that he fell directly onto his left arm, not merely catching his fall with his left hand, and that he didn't lose his balance, but the ladder broke. There is sufficient evidence, even a preponderance, to support a finding that the employee did not injure his left arm in an accident at work on October 18, 2007. And on that basis, we urge this Court to reinstate the Workers' Compensation Commission's original denial of compensation. Thank you, Counsel. Counsel, you may respond. Thank you, Your Honor. May it please the Court, Counsel. Your Honor, we are here because of three mistakes, Scrivener's errors, typographical errors, contained in the company clinic records, where Let me ask you a question about that. Yes, sir. You said company clinic, and in your brief you say employee. I'm reading from your Statement of Facts, page 2. The employee reported his injury to his supervisor and was sent by his employer for treatment at Metro Center for Health with Dr. Daniel C. DeSimone. The employer chose this clinic and Dr. Notch Tishner. You have no citation to the record after that statement. Your Honor? So tell me, does the record support that statement? It supports it entirely. Page 49 of Exhibit 1 of the medical records of that provider, Metro Primary Care Associates. Every time an injured worker, or a worker is injured at this place, a permission, a medical treatment authorization must be sent to the provider. And it clearly states, medical treatment authorization, date 2-4-0-8, other explained follow-up. The same is true for the 10-18 visit. Before he can be seen here, if you take a look at page 60 of Exhibit 1, again, the medical records of Metro Primary Care Associates, it directly answers your question, Your Honor. New injury, he was sent by Regina Neforez from USGO to Metro Primary Care Associates. That's proof positive. Corroborates my client's claim. Your Honor? Corroborates what? Corroborates that he was sent there by his employer for a work injury, Your Honor. He was seen by a doctor, was he not? Pardon me? He was seen by a doctor, Dr. DeSimone? He was seen by Dr. DeSimone, Your Honor. And Dr. DeSimone writes a note that says, quote patient's word. The patient was paining around 12.30 to 1. Fell and put all right weight on right arm, that's the arm. Painful in shoulder when patient moves. Patient states no allergy. The patient's 43 years old and prints with complaints of arm pain. Patient fell and injured arm, around elbow and shoulder. Fell about two or three feet and landed on an outstretched arm. Pain with pain upon reaching up. Patient had surgery, I presume surgery, on right forearm five years ago. No paralysis, paralysis in right hand. And he notes pain. Then on physical examination, the doctor notes pain over right AC joint and GH joint. Also pain over claimant's left elbow. And has full range of motion in elbow but very limited in left shoulder. Right. It seems that he talks about the right arm but examines his left arm. And that's the crux. But, Your Honor, the fact that he puts both right and left on there documents that there's confusion. Documents that there's a mistake. Not a mistake. Why does it have to be a mistake? Why didn't he have exactly the symptoms the doctor put down? Well, Your Honor, these are two pages out of six inches of records. He testified credibly at trial. There's no issue to the rest of his testimony being uncredible. He fell on his left arm from a ladder. Ladder broke, ladder slipped. He's at work. He says at hearing he fell on his left arm. They produced medical records from the doctor saying he said he fell on his right arm. In addition to that, the doctor examined his right arm and he made findings as to those right arms. Right elbow contusion and a right shoulder strain with possible first degree AC separation. And all the rest of the records identify the claimant's right upper extremities, the one for which he saw treatment, including radiology reports. X-rays were taken by a ladder. Okay. So now the question becomes, does the commission have the right to disbelieve the point or the petitioner in favor of putting greater weight on what was in the medical records on the date of his allegation? And if the answer to the question is if you say no, they can't do that, why can't they? Your Honor, what their duty is to weigh the evidence, but to look at the entire body of evidence is my response, Your Honor. Well, how do you know that they didn't do that? I guess what I'm struggling with, you're an unusual prosecutor. He's appealing the commission's, he wants us to reinstate the commission's decision. My opponent was. Yeah. And deference has to be given to that. I agree, Your Honor. You can't just say, well, there's a conflict in the evidence, the claimant's testimony may be reasonable and logical, therefore, he should win the case. Because the commission didn't see it that way. There's a clear conflict of evidence here, and you'd have to concede that beyond a reasonable doubt. You may explain it, but the medical records under any interpretation are inconsistent with the claimant's testimony. Correct? And you give us a plausible explanation there's a mistake here, but we don't substitute our judgment for that of the commission, do we? No, you don't, Your Honor. But I would say that the arbitrator looked at the evidence and made the correct decision. I would say that the circuit court looked at the evidence and had made the correct decision to reinstate the arbitrator's decision. Except the only body of review out of everybody you referred to is the commission. That is correct, Your Honor. And when you say, took a look at the evidence, I do not believe that they did a thorough job of looking. You cannot ignore the rest of the evidence. And say you made. The claimant's argument here wasn't, look, I injured both of them. No, Your Honor. And they worked on me. I ran on October the 18th, and then they worked on my left arm later. His testimony was they never worked on his right arm at all. Now, do you think Dr. Desimone knows the difference between a left arm and a right arm? I certainly do. And I just think that the way it was transcribed, he always meant to put the left. It was kind of a risky gamble going into the arbitration with only claimant's testimony that the records were in error. I mean, you didn't have any opportunity to present Dr. Desimone as a witness? Or to obtain corrected records? Dr. Desimone, by the time this went to hearing, it was close to five years later, he would have no way of knowing which exam, which arm he examined. Yeah, but somewhere, you know, longer ago, it would have been, I mean, assuming that you were involved in the case, would have recognized that, hey, you know, his description as to which arm it is doesn't match up with my client's description. Okay. And clearly, there is a confusion. There is an error, which their company doctor did this, wrote this. Then this doctor sent him to PMI, Moscow's Skeletal Institute, Dr. Wardell. They only examined the left arm. All the treatment has been the left arm. The fall was to the left arm. There was trauma. There were objective findings. None to the right arm or shoulder. I don't think anybody was used to the fact that this guy's got an injury to his left arm. What they dispute is that it happened at work on October the 18th, because he was treated for injuries to his right arm. Your Honor, the fact that it says left versus right does not mean that there was an injury to his right arm. It means that there was an injury to his right arm. Who makes that decision? Who makes the decision as to whether the medical records are correct or the testimony of the plaintiff five years later is correct? The commission makes that decision, and they made it. And my position is that because of the confusion, you cannot say at this point. You interject confusion. Dr. DeSimone didn't say he was confused. Well, Your Honor. So the question becomes, just because they treated the left arm at some day later, doesn't mean that his left arm was injured on October the 18th. When's the first time a doctor treated his left arm? It seems that the first time they treated the left arm was on February 4th, 2008. And again. Several months later. Approximately four months later from the accident. Approximately four months later. He'd gone back to work, working with restrictions, had a flare-up, and then came back. Well, about favoring it, DeSimone was mistaken about what specifically? Left. Left versus right. He was just writing right down when he should have been writing left. The doctor was dead loose. He writes down the wrong. It's not important to the doctor to put down the right arm? He corrects it, Your Honor. From there on out, he writes from 2-4-8 when it's brought to his attention. No, it's my left arm. And so we have to take the claimant's word for the fact. Who corrects it? The claimant corrects it, not Dr. DeSimone. The claimant corrects it to him. And with regards to the blood pressure cup that opposing counsel mentioned, he continues. The records reveal that they take the blood pressure from the left arm even after they start treating left arm right versus left. Okay, so you're saying the claimant corrects it. He tells DeSimone months later that, hey, doc, you're working on the wrong arm? Is that what he's telling you? Absolutely. Why are you examining my left arm when it's my right arm when it's my left arm? Yes. So when he goes into the initial treatment. The claimant denied that Dr. DeSimone retrieved his right arm. That was his testimony. He denied it. Treated. We do not deny that he ordered the right arm x-rays. He definitely ordered the right arm x-rays. But the treatment, the injections, the physical therapy that DeSimone ordered was only to the left arm, Your Honor. There were no injections to the right arm. What was it about the x-ray report? You noted in your brief that the x-ray report initially had left circled. And that was x-ed out and then right was circled. I actually had a blowup of that exhibit, but I was told that I was not able to use that. Did you put it in your appendix? It is in the appendix here. In your appendix? No, I. You're looking at the record. I'm looking at the record. The appendix to your brief. I do not think I did. Something important like that you might want to put in an appendix. But anyway. Page 57 of Exhibit 1. Clearly, at the bottom of that page, it's left shoulder pain, left elbow pain. Somebody goes back and puts down right, crosses out L, puts in right. That's on the day of the initial exam. That's the day of the initial exam. So, you know, again, three pages, two mistakes on 1023 and 1018 versus the rest. Versus the rest of this record. And versus the deposition testimony. You can't rely on a Scrivener's error for your decision. Can I have the witnesses answer? No. Can you testify that they saw him fall on his left arm, his right arm? No. The only thing that they did do was send him their new injury, 1018-07. Page 60, again, one of those medical treatment authorizations that he was sent there by Regina. This is the new patient. We authorized him to treat. I think the problem here is this, though. You know, when you deal with manifest weight questions, there's no right answer. There's no it has to be this way or it has to be that. It's a question of an evaluation of material and determining the weight to be given to it based on a whole number of issues. Who's got a motivation to testify one way versus another way? And then a decision is made. And as long as there is evidence in the record to support that decision, that decision has to be honored. And the problem that we have is sometimes we have a situation where circuit judges believe they get to re-weigh it. This is what I would have done if I was the administrative agency or the trial judge. I would have done it this way. And so then they start reversing the agency, and they get reversed all the time for doing it. I can't tell you how many times we hear cases where if we were the trial judges, these people would be recovered or they wouldn't be recovered. Totally opposite. And we have to affirm the commission. We have to affirm it because there is evidence in the record. In this particular case, there is evidence in the record to support the commission's decision, and that's DeSimone's record. Your Honor, if he had continued to treat for his right arm throughout his course of DeSimone's... If he were treating for his left arm on October the 19th, you may have a point. But in this particular case, the record is clear. He didn't actually record any treatment to this man's left arm until four months after the event, after this guy had gone back to work. He'd gone back to work with restrictions, with medication. Right. And tried to tough it out like we do. Many people do. Like we do. But the longer the time passes between the alleged event and the first time the medical record suggests there is treatment, raises a suspicion on the part of the commission that something happened in the end room. But, again, to draw that suspicion respectfully would be you have to have something. You have to have a basis. You can't have speculation. I think something's going on. You don't have to believe him. Pardon me? You don't have to believe his unremitted testimony. The commission is not required to believe him. That is correct, Your Honor, and I agree with that. Your time is up. Okay. May I conclude? Yes. The mistakes in two pages of medical records should not outweigh the fact that something happened on October 18th, 2007. The facts and the medical evidence can only leave a rational trier of fact. Credible evidence suggests that the left arm was injured and not the right arm. Because of the rest of the surgeries, because of the rest of the treatment, nobody in their right mind would subject themselves to three surgeries, one under general anesthesia, but all of them painful, without having an injury to the left arm. There was never any injury to the right arm. I thank you for your time. Thank you, Counsel. Counsel, you may reply. Respectfully, Wade, Rebuttal, and Ms. Schreiner for their experience. Thank you, Counsel, both, for your arguments. This matter will be taken under advisement. This position shall issue. Thank you, Your Honor.